582 So.2d 285 (1991)
STATE of Louisiana
v.
Willie James GORDON.
Nos. KA 90 0869, KA 90 0870.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
*287 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge by James Murray, Asst. Dist. Atty., for plaintiff/appellee.
Trudy Avants, Baton Rouge, for defendants/appellants.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.
The defendant, Willie James Gordon, and a co-defendant, Melvin Toomer, were charged by grand jury indictment with aggravated rape, aggravated kidnapping, and *288 armed robbery, in violation of LSA-R.S. 14:42, 14:44, and 14:64, respectively. They pled not guilty and the cases were severed for trial. Toomer was tried separately and is not a party to the instant appeal. After trial by jury, the defendant was found guilty as charged on all three counts. Subsequently, he was adjudicated a second felony habitual offender. The defendant received concurrent sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the aggravated rape and aggravated kidnapping convictions. For the armed robbery conviction (which was the only conviction enhanced by the habitual offender adjudication), the defendant received a consecutive sentence of one hundred ninety-eight years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging seven assignments of error.

FACTS
At approximately 7:30 p.m. on February 11, 1989, the victim, an adult female, parked her car behind the Baton Rouge Little Theatre, located in the Bon Marche Mall, and began walking to the rear entrance of the theatre. She was approached by two black males. Although she ignored them and continued walking, the older man (later identified as the defendant) pulled a gun and the two men forced her into her car. The defendant drove her car, the victim was seated in the middle, and the other perpetrator (later identified as Melvin Toomer) sat in the right, front passenger seat. They drove to a dead-end street near Melrose Elementary School, where they took turns raping the victim vaginally. As one raped her, the other kept a lookout. Afterwards, they placed the victim in the trunk of her car and drove around while openly discussing whether or not to kill her.
After driving around for approximately twenty minutes, they returned to the same location near Melrose Elementary School, where Toomer raped the victim a third time. Thereafter, the perpetrators began discussing money. They had already taken the victim's diamond earrings and $10.00 from her purse. She informed them that she could get money from her bank using her money machine card. The perpetrators agreed that, if she could secure $200 for them, they would allow her to leave in her car. However, if she only got $100 from the money machine, they would let her go, but they would take her car. They drove the victim to her bank, where she was able to obtain only $100 from the money machine. Thereafter, she gave the perpetrators the $100; and they dropped her off in the Bon Marche parking lot behind the theatre. They informed her that if she told anyone what had happened, they would "trash" her car. The victim went inside the theatre, informed a friend what had happened, and was immediately taken to Woman's Hospital. The police were also summoned.
Later that evening, the defendant and Toomer were spotted driving the victim's vehicle, and a chase ensued. The perpetrators stopped, exited the victim's vehicle, and fled on foot. At one point, one of them fired upon pursuing officers in the Tall Timbers Apartments. After an extensive manhunt which lasted approximately sixteen hours, Toomer was arrested. An address book (State Exhibit 2) found in his possession listed the defendant's name and address. The defendant was arrested shortly thereafter.

ASSIGNMENTS OF ERROR NOS. ONE AND THREE:
In assignment of error number one, the defendant contends that the trial court erred in overruling his objection to testimony regarding the search warrant. In assignment of error number three, the defendant contends that the trial court erred in denying his motion to suppress physical evidence seized during execution of that warrant.
At the motion to suppress hearing on July 14, 1989, Detective Bryan White testified that, while questioning Melvin Toomer, he noticed that Toomer had placed a wet address book on the table to dry out. Det. White opened the address book and, on the first page, he observed the name Willie *289 Gordon and a Baton Rouge address. Remembering that the victim had informed him that the younger assailant (Toomer) referred to the older assailant (defendant) as "Willie," Det. White inquired if the Willie Gordon listed in the address book was Toomer's accomplice in these offenses; and Toomer replied in the affirmative. This information was contained in the affidavit of probable cause in support of the search warrant. Additionally, Det. White testified that latent fingerprints removed from the victim's car were matched to both Toomer and the defendant. This additional information was also included in the affidavit of probable cause in support of the search warrant.
After the above testimony by Det. White, the State introduced into evidence State Exhibit 2, an arrest warrant for the defendant, and State Exhibit 3, a search warrant for the defendant's residence. At this point, the defense objected on the basis that the State had failed in its burden to prove the sufficiency of the affidavit in support of the search warrant. Apparently, the defendant was arguing that further testimony, or other evidence, was required in order to establish probable cause before the search warrant could be introduced into evidence. However, the trial court correctly noted that, once the search warrant was introduced into evidence, the defense had the burden of proof to attack it on the basis of lack of probable cause. See La.C.Cr.P. art. 703 D; State v. Harris, 444 So.2d 257, 260 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (La.1984). Therefore, State Exhibit 3 was properly introduced into evidence; and the trial court correctly denied the defendant's objection on this basis.
A search warrant may issue only upon probable cause established to the satisfaction of a judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La. Const. Art. 1, § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Revere, 572 So.2d 117, 128 (La.App. 1st Cir.1990); State v. Smith, 546 So.2d 538, 541 (La.App. 1st Cir.), writ denied, 552 So.2d 393 (La.1989).
In his third assignment of error, the defendant contends that the evidence seized at the time of his arrest (his gun, clothes, and shoes) should have been suppressed because the search warrant was issued without probable cause. Specifically, he contends that the information in the affidavit in support of the search warrant was hearsay and was not determined to be reliable. Nevertheless, an affidavit in support of a search warrant may be based upon hearsay; however, the affidavit must set forth sufficient underlying circumstances and details to provide a substantial factual basis by which the magistrate might find both the informant and the information given by him to be reliable. State v. Clay, 408 So.2d 1295, 1299 (La. 1982); State v. Tomasetti, 381 So.2d 420, 422 (La.1980).
In the instant case, the affiant was Det. White. The information he provided in the affidavit was derived from his conversations with the victim and Toomer during the investigation of these offenses. While this information was hearsay, it was reliable and alone would have provided probable cause for the issuance of the search warrant. When considered along with the additional information that the defendant's (and Toomer's) fingerprints were found in the victim's car, there could be no doubt that sufficient probable cause for the issuance of this search warrant was established. Therefore, the trial court correctly denied the defendant's motion to suppress physical evidence seized pursuant to this search warrant.
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, the defendant contends that the trial court erred in overruling his objection to the identification of photographs by a State witness. Specifically, *290 relying on La. C.E. art. 901 A, the defendant contends that these photographs were erroneously admitted into evidence without proper authentication or identification.
La. C.E. art. 901 A provides:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and when they shed light upon the matter before the court. State v. Robertson, 454 So.2d 205, 210 (La.App. 1st Cir.), writ denied, 458 So.2d 487 (La.1984). It is well settled that a photograph need not be identified by the person who took it to be admissible in evidence. State v. Robertson, 454 So.2d at 210. A proper foundation for admission into evidence of a photograph is laid when a witness having personal knowledge of the subject depicted by the photograph identifies it. State v. Kimble, 546 So.2d 834, 839 (La.App. 1st Cir.1989). See also, La. C.E. art. 901 B (1).
State Exhibits 24 and 25 depicted the defendant's face and scars on the back of his right hand. At the trial, East Baton Rouge Parish Sheriff's Detective Bryan White testified that the victim informed him that the defendant had scars on the back of his right hand. Detective White testified that he examined the defendant after his arrest and that photographs of defendant were also made at this time. Although he could not recall being present when State Exhibits 24 and 25 were taken, and he was not certain who took these photographs, Detective White testified that these two photographs were true and correct representations of what he observed. Furthermore, on cross-examination, the defendant admitted to having scars on the back of his hand at the time of his arrest. Therefore, we find no error in admitting State Exhibits 24 and 25 into evidence over the defendant's objection.
This assignment of error is meritless. ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, the defendant contends that the trial court erred in denying his motion to suppress the lineup identification. Specifically, he argues that the physical lineup was suggestive and unreliable and, therefore, the subsequent in-court identification was tainted.
A defendant attempting to suppress an identification must prove that the identification was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Daughtery, 563 So.2d 1171, 1173-1174 (La.App. 1st Cir.), writ denied, 569 So.2d 980 (La.1990). If a witness' attention is focused on the defendant during the lineup, the identification procedure is unduly suggestive. State v. Collins, 546 So.2d 1246, 1257 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). Even should the identification be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Lewis, 489 So.2d 1055, 1057-1058 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). In reviewing the identification procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Brown, 481 So.2d 679, 685 (La. App. 1st Cir.1985), writ denied, 486 So.2d 747 (La.1986).
At the motion to suppress hearing which took place on July 14, 1989, Det. White testified that the defendant was allowed to pick the other five subjects who appeared in the lineup with him. He further testified that there was no suggestion to the victim as to where the defendant was standing in the lineup, nor were there any other improprieties in connection with the lineup procedure. He testified that the defendant, who was standing in the number *291 three position, was immediately identified by the victim.
In his motion to suppress, at the motion to suppress hearing, and in his brief to this Court, the defendant contends that the physical lineup was suggestive. However, there was absolutely no evidence to support this allegation. In fact, the evidence that the defendant was allowed to pick the other participants in the lineup, and that no suggestion of any kind was made to the victim, indicates that the physical lineup procedure was not suggestive.
Furthermore, the defendant has failed to prove a likelihood of misidentification. At the continuation of the motion to suppress hearing on July 27, 1989, the defendant argued to the trial court that the State had failed to prove that the identification was reliable. However, as noted above, the defendant had the burden of proving a likelihood of misidentification. State v. Daughtery, 563 So.2d at 1174.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court considered these five factors in determining whether or not a photographic identification was reliable: (1) the witness' opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness' certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. Applying the Manson analysis to the facts of the instant case, we find that the victim's identification of the defendant was reliable. The victim had ample opportunities to view the defendant during the commission of these offenses, especially when the interior light to her car came on each time the door was opened. Because the victim feared for her life during this two-hour ordeal, she certainly paid a high degree of attention. The record indicates that the descriptions of the perpetrators given by the victim were accurate. Only one week elapsed between the commission of these offenses and the victim's identification of the defendant at the physical lineup. The defendant's argument about the reliability of the identification is primarily derived from the victim's trial testimony. He notes that the victim expressed a bit of uncertainty after initially picking subject number three (the defendant). However, on both direct and cross-examination, the victim explained that, after immediately picking subject number three (the defendant), she hesitated because subject number four resembled subject number three. However, after a few minutes, she was convinced that her initial choice, subject number three (the defendant), was correct.[1]
Considering all of the above, we find that the defendant failed to prove either that the lineup identification was suggestive or that there was a likelihood of misidentification. Therefore, the trial court correctly denied the defendant's motion to suppress the physical lineup identification.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the evidence was insufficient to support the instant convictions. Initially, we note that, in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements *292 of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984).
LSA-R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
* * * * * *
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
LSA-R.S. 14:44 provides, in pertinent part:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
LSA-R.S. 14:64 A provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In his brief to this Court, the defendant does not explain how or why the evidence was insufficient. Instead, he merely makes a general statement that "the evidence presented was insufficient to convince a trier of fact beyond reasonable doubt of the existence of every element of each of the three offenses charged and the convictions should be reversed." We disagree. In fact, the State produced overwhelming evidence of the defendant's guilt of all three offenses. The victim identified the defendant in a physical lineup and in court. She testified that the defendant was the older of the two perpetrators. She also identified the younger perpetrator, Melvin Toomer, who was seated in the courtroom. Of the twenty-three latent fingerprints removed from the victim's car, six belonged to the defendant (five belonged to Toomer, one to the victim, five were of insufficient quality to identify anyone, and six were of good quality but were not identified.) A bullet removed from the wall of the bath house at the Tall Timbers Apartments was determined to have been fired from the gun found under the defendant's mattress at the time of his arrest. The defendant and Toomer both engaged in vaginal intercourse with the victim. Each man took the gun and kept a lookout while the other raped her. The victim testified that she consented only because they had a gun and she feared for her life. See LSA.R.S. 14:42 A (3 and 5) and B (1 and 2). Although they openly talked of killing the victim because she could identify them, they decided to let her go if she obtained money from her money machine, which she did. See LSA-R.S. 14:44. While armed with a gun, the defendant and Toomer took the victim's car, her diamond earrings, ten dollars from her purse, and one hundred dollars which she obtained from the money machine. See LSA-R.S. 14:64 A.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is *293 one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Although the defendant and his mother gave conflicting testimony as to the defendant's whereabouts on the evening of these offenses, the instant guilty verdicts indicate that the jury accepted the testimony of the State's witnesses and rejected the alibi testimony of the defendant and his mother. Although the defendant denied committing the instant offenses, he was unable to explain why six of his fingerprints were found on the victim's car.
After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of aggravated rape, aggravated kidnapping, and armed robbery. See State v. Mussall, 523 So.2d 1305 (La.1988).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIX:
In this assignment of error, the defendant contends that the trial court erred in adjudicating him to be a second felony habitual offender.
In order for a court to impose enhanced punishment under the habitual offender statute (LSA-R.S. 15:529.1), the State must prove two things: (1) the prior felony conviction(s) alleged; and (2) the present defendant's identity as the individual previously convicted. State v. Johnson, 457 So.2d 1251, 1252-1253 (La.App. 1st Cir.1984). To prove the defendant's prior felony conviction for simple robbery in 1987, the State offered prima facie proof, i.e., his prison records or "pen pack." See LSA-R.S. 15:529.1 F. Because the "pen pack" was missing the minute entry of the defendant's conviction for simple robbery on March 11, 1987, a certified copy of the minute entry was introduced into evidence as State Exhibit 1.
The State's fingerprint expert, Martha Hilborn, testified that State Exhibit 2 was an arrest card for the instant offenses which contained the defendant's fingerprints. She testified that she fingerprinted the defendant in court during his trial for the instant offenses, compared his fingerprints to those on State Exhibit 2, and concluded that they were identical. She also identified the defendant as the person she fingerprinted during the trial. Next, she compared the defendant's fingerprints in State Exhibit 2 with those on two separate arrest cards contained in the "pen pack" and concluded that they matched. However, in his brief to this Court, the defendant notes a discrepancy in the "pen pack." While the defendant's prior felony conviction was for simple robbery, one fingerprint card in the defendant's pen pack listed the charge as "S/burg" (an obvious abbreviation of simple burglary). Apparently, this discrepancy is due to the fact that this fingerprint card was made at the time of the defendant's arrest (possibly for simple burglary) but the defendant was actually convicted of simple robbery.
In any event, the defendant's own testimony at the trial for the instant offenses established both the prior felony conviction for simple robbery in 1987 and his identity as this prior convicted felon. During the trial, the defendant admitted his prior felony conviction for simple robbery in 1987 and also admitted that he was on parole for this conviction when he committed the instant offenses. The State requested that the trial court take judicial notice of the trial for the instant offenses and the defendant's testimony therein, which the trial court did.[2] Accordingly, we conclude that *294 the trial court properly adjudicated the defendant to be a second felony habitual offender.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SEVEN:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Chaisson, 507 So.2d 248, 250 (La.App. 1st Cir.1987). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has wide discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court briefly reviewed the facts of the instant offenses and the defendant's criminal record. Noting that the defendant had been released on parole only ten weeks before committing the instant offenses, the trial court concluded that the defendant was "a vicious, dangerous criminal." The trial court also stated: "You're a jackal in sheep's clothing and you need to be put where you can never participate in criminal conduct again." The trial court noted that the defendant was ineligible for probation, stated that he was in need of correctional treatment, and concluded that any lesser sentence would deprecate the seriousness of the offenses. Considering the above, we find that the trial court adequately complied with the Article 894.1 guidelines.
In his brief to this Court, the defendant does not contest the sentences for his aggravated rape and aggravated kidnapping convictions. Of course, these *295 convictions warranted mandatory sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and involved no sentencing discretion. The defendant's only complaint is directed to the consecutive sentence of one hundred ninety-eight years at hard labor without benefit of parole, probation, or suspension of sentence which he received for the armed robbery conviction. This sentence was enhanced pursuant to the defendant's adjudication as a second felony habitual offender. He received the maximum sentence for this offense. See LSA-R.S. 14:64 B and LSA.R.S. 15:529.1 A(1). This Court has stated that the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983). Furthermore, the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct. See La.C.Cr.P. art. 883; State v. Buie, 477 So.2d 157, 166 (La.App. 1st Cir.1985). However, even if the convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive. Other factors must be taken into consideration in making this determination. State v. Ferguson, 540 So.2d 1116, 1123 (La.App. 1st Cir.1989). For instance, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public due to his past conduct or repeated criminality. State v. Grimes, 527 So.2d 1079, 1082 (La. App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
In our view, the trial court was justified in imposing the maximum sentence for the armed robbery conviction upon the defendant's adjudication as a second felony habitual offender and in imposing this sentence to run consecutively to the sentences for aggravated rape and aggravated kidnapping. The defendant committed the instant offenses only ten weeks after his release from prison on parole for the prior simple robbery conviction. The defendant and Toomer raped the victim three times at gunpoint. They robbed her of her car, her diamond earrings, and ten dollars from her purse. After openly discussing whether or not they should kill the victim in order to prevent her from identifying them, they finally agreed to release her after she gave them one hundred dollars which she got from the money machine. There is no doubt that the victim was terrorized throughout this ordeal, which lasted approximately two hours. Part of the time, they kept the victim locked in the trunk of her car as they drove through various parts of town. Considering the defendant's criminal record and the circumstances of these offenses, we find no abuse of discretion in the sentences imposed.
This assignment of error is meritless.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In determining whether a ruling on a motion to suppress was correct, we are not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence given at the trial of the case. State v. Fleming, 457 So.2d 1232, 1235 n. 3 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (La.1984).
[2] In its brief to this Court, the State contends that, because the defendant's simple robbery conviction was entered before the same trial court as the instant convictions, the trial court could simply take judicial notice of the defendant's prior felony conviction for simple robbery and the defendant's identity as the same individual who committed the instant offenses. This argument is incorrect. State v. Aguillard, 371 So.2d 798, 799 (La.1979). Former LSA-R.S. 15:422 provided, in pertinent part:

Judicial cognizance is taken of the following matters:
(7) The matters pending in the court taking such cognizance and who are its attorneys.
However, LSA-R.S. 15:422 was repealed by the new Code of Evidence, which became effective on January 1, 1989. See Act 515 of 1988. Louisiana Code of Evidence Article 201 provides, in pertinent part:
A. Scope of Article. This Article governs only judicial notice of adjudicative facts. An "adjudicative fact" is a fact normally determined by the trier of fact.
B. Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
(1) Generally known within the territorial jurisdiction of the trial court; or
(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
C. When discretionary. A court may take judicial notice, whether requested or not.
D. When mandatory. A court shall take judicial notice upon request if supplied with the information necessary for the court to determine that there is no reasonable dispute as to the fact.
Nevertheless, Comment (a) to Louisiana Code of Evidence Article 201 provides: "This Article is intended to codify and clarify prior Louisiana law and does not substantially change it."
An habitual offender proceeding is part of the same case which led to the conviction for which punishment is being enhanced. State v. Aguillard, 371 So.2d at 799, n. 1. Therefore, at the habitual offender hearing, the trial court properly took judicial notice of the prior proceedings connected with the defendant's prosecution for aggravated rape, aggravated kidnapping, and armed robbery (including the trial and the defendant's testimony therein.) See State v. Jones, 332 So.2d 461, 463 (La.1976) (In an habitual offender hearing, the trial court could take judicial notice of any prior proceeding which was a part of the same case he had previously tried.) To summarize, we find that the trial court could not take judicial notice of the defendant's prior felony conviction for simple robbery and the defendant's identity as the person so convicted solely due to the fact that the simple robbery conviction was entered before it in a previous case. However, the trial court could take judicial notice of the defendant's trial testimony (admitting his prior simple robbery conviction) because the aggravated rape, aggravated kidnapping, and armed robbery trial was a prior proceeding in the same case as the habitual offender hearing.